# UNITED STATES DISTRICT COURT
## EASTERN OF LOUISIANA

| | |
|---|---|
| **ERIC A. KROLL and RAUNONA KROLL** | **CIVIL ACTION:** |
| **VERSUS** | **JUDGE:** |
| | **MAGISTRATE JUDGE:** |
| **MUTUAL OF OMAHA MORTGAGE, INC.** | **JURY TRIAL DEMAND** |

## COMPLAINT FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes Petitioners, Eric A. Kroll and Raunona Kroll, who, with full reservation of rights to plead further herein, respectfully avers as follows:

### I.  PARTIES

**1.**

Plaintiffs made herein is Eric A. Kroll and Raunona Kroll (hereinafter referred to as **"Mr. Eric A. Kroll" and "Mrs. Raunona Kroll"**), who are a married couple of the full age of majority, residing and domiciliary of Orleans Parish, Louisiana.

**2.**

Made Defendant herein is **MUTUAL OF OMAHA MORTGAGE, INC.** (herein after referred to as **"Mutual of Omaha Mortgage"**), a foreign corporation domiciled in California (3131 Camino Del Rio N., Suite 1100. Mutual of Omaha Mortgage, Inc San Diego, CA 92108) authorized to do and doing business in this State, Louisiana Residential Mortgage Lending License 1025894, that has a principal place of business in the state located at 3867 Plaza Tower, 1st Floor, Baton Rouge, LA 70816, who may be duly cited and served through its registered agent, PARACORP INCORPORATED, at 3867 Plaza Tower, 1st Floor, Baton Rouge, LA 70816.

**3.**

That said Defendant are justly and truly indebted unto the petitioners made Plaintiff in Section I, paragraph I, *individually, jointly and in solido,* for such damages as will fully and fairly compensate petitioner, all right with legal interests thereon from the date of judicial demand until paid, for costs of expert witnesses retained, for attorney fees, and for all costs of these proceedings for the following reasons, set forth in Section IV.

## II. JURISDICTION AND VENUE

**4.**

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question, 42 U.S.C. § 3613(a)(1) because this action invokes the Fair Housing Act, 28 U.S.C. § 1343(a), Section 805 of the Fair Housing Act, 42 U.S.C. §3605; Fair Credit Reporting Act, 15 U.S.C. §1681s–2, and Subpart E of Regulation V, (12 C.F.R. §§1022.40–42); Truth in Lending Act (TILA), 15 U.S.C. 1601 *et seq.*; Section 5(a) of the Federal Trade Commission Act, codified at 15 U.S.C. §45(a), because this action involves civil rights issues, and 28 U.S.C. § 1367(a) because the claims arising under the laws of Louisiana are so related to the federal claims that they form part of the same case or controversy.

**5.**

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred, the material misrepresentations and fraudulent acts occurred, and a substantial part of property that is the subject of the action is situated in, Orleans, Louisiana.

## III. STATEMENT OF FACTUAL ALLEGATIONS

**6.**

On May 17, 1978, Felix C. Kroll purchased an immovable property, a residential property, located at address of 11200 Morrison Road, New Orleans, LA 70128, with the legal description being as follows:

> A portion of ground, together with all the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes and advantages thereunto belonging, or in anywise appertaining, situated in the Third District of the City of New Orleans, State of Louisiana, in that portion thereof known as Lake Barrington Subdivision, being are subdivision of Lot 3R-1, Sections 25 &26 of the LaKratt Tract, (former New Orleans Lakeshore Land Company Tract) according to the plan of subdivision of B.L. Carter, C.E., dated 11-12- 73, revised 01-04-74, and 7-22-74, approved by the City Planning Commission on 8-27- 74, registered in COB 728, Folio 229 and in COB 720, Folio 724, Orleans Parish and said Lot is designated and described as follows, to-wit: Lot 5, in Square "E", bounded by Morrison Road, Wright, Road, Whiteside Road and Finchley Road, said lot 5commences 240' from the corner of Morrison & Finchley Roads and measures thence 60'-front on SW of Morrison Road same width in rear by a depth between equal parallel lines of 120'. All as more fully shown on a survey of Universal Engineers, Inc., 05-24-76, revised on 05-16-78 which is annexed hereto.

Which has the address of 11200 Morrison Road, New Orleans, LA 70128.

(*See* **Exhibit A**).

## 7.

Felix C. Kroll passed on December 8, 2016, and subsequently his estate was probated under *Succession of Felix Calvin Kroll,* Docket No. 2020-267, Division I, Orleans Civil District Court, State of Louisiana. As such, the Judgment of Possession was rendered in favor of sole heir, 100% Disabled African American Veteran, Mr. Eric A. Kroll, as sole owner of the immovable property. (*See* **Exhibit B**).

## 8.

Thereafter, on November 6, 2020, Mr. Eric A. Kroll decided to take out a Promissory Note, secured by a Mortgage from the mortgagee, Mutual of Omaha Mortgage, Inc. (*See* **Exhibits C and D**).

## 9.

The monthly payment required was $447.25, starting on January 1, 2021. (*See* **Exhibit C**). Further, Mr. Eric A. Kroll also obtained his own homeowner's insurance separately on the immovable property.

**10.**

Since the inception of the note, Mr. Eric A. Kroll paid his monthly payments on time every month. These payments were directly taken out of his bank account.

**11.**

Hurricane Ida occurred on August 29, 2021, and a state of emergency was declared statewide by Governor John Bel Edwards as a result of then-Tropical Storm Ida in Proclamation 165 JBE 2021 on August 26, 2021 and the catastrophic damage that Hurricane Ida has caused in the state.

**12.**

Thereafter, on November 1, 2022, the mortgagee issued a new monthly payment of $1,375.54 dollars. (*See* **Exhibits C-1 and C-2**).

**13.**

When Mrs. Raunona Kroll inquired on behalf of Mr. Eric A. Kroll, she was informed that the mortgage payment increased to reflect a force placed homeowner's insurance on the property.

**14.**

However, Mr. Eric A. Kroll and his wife Mrs. Raunona Kroll provided the homeowner's insurance policy to reflect that the property did have insurance effective from October 26, 2022. (*See* **Exhibits E, E-1, and E-2**).

**15.**

Mortgagee, Mutual of Omaha Mortgage, Inc., did not rectify this matter to show the accurate current monthly payments until January 23, 2023. (*See* **Exhibit F**).

**16.**

After the correct monthly payments were recalculated, Mr. Eric A. Kroll and his wife Mrs. Raunona Kroll paid the monthly amount to bring about account the current for the months of November 2022, December 2022, January 2022, and February 2022, on February 14, 2023. (*See* **Exhibit G**).

### 17.

Mr. Eric A. Kroll's account was partially corrected when the insurance department provided a recalculation after removing the forced-placed insurance. Unfortunately, Mr. Eric A. Kroll's account was only corrected on the insurance end—the mortgagee from the loan department sent out the that there was a shortage of funds reflecting the force placed insurance again on February 16, 2023, just two days after this matter was resolved. (*See* **Exhibits H**).

### 18.

Mortgagee, Mutual of Omaha Mortgage, Inc., provided Mr. Eric A. Kroll's a correct monthly payment starting for March 1, 2023 in the amount of $463.52 dollars. (*See* **Exhibit I**). Yet again the mortgagee is still reflecting the escrow balance now for the month of December 1, 2022 for $1,375.54 dollars, which is inaccurate.

### 19.

Further, mortgagee, Mutual of Omaha Mortgage, Inc., refused to apply the monthly payments for the months of January 2022, and February 2022, despite having received the funds.

### 20.

Thereafter, when Mr. Eric A. Kroll attempted to pay mortgagee, Mutual of Omaha Mortgage, Inc., for the monthly payment of to pay $463.52, due on May 1, 2023 per April statement, but online account access was denied. Further, Mrs. Raunona Kroll contacted customer service number (877-330-4066) to pay $463.52, the mortgagee representative on the phone expressed that she could not take a payment. (*See* **Exhibit J**).

### 22.

When the recalculation completed and the payment of $1,800.00 dollars brought Mr. Eric A. Kroll current as of February 1, 2023.

**23.**

Mr. Eric A. Kroll avers that the debt secured by the security mortgage is legally unenforceable and procedure required by law for an executory proceeding has not been followed.

**24.**

Mr. Eric A. Kroll avers that he is not in default of the note and this foreclosure proceedings were done to inaccurately on not updated records.

**25.**

Further, the foreclosure paperwork filed by Defendant indicated service was done on Plaintiffs, when Defendant fully well knew that they resided partially in 1315 Springview Drive, Allen, Texas, 75002.

**26.**

Mr. Eric A. Kroll asserts that there would be irreparable damage should the Sheriff Sale proceed.

**27.**

Mrs. Raunona Kroll spent time creating and writing both of her RESPA dispute letters, along with the help of her daughter, and was reassured on the phone, and incurred out-of-pocket expenses related to these RESPA dispute letters, including expenses for preparing, photocopying and obtaining certified mailings of correspondence. She also experienced lost time and inconvenience both in putting the information needed for the RESPA dispute letters and having to educate herself on the RESPA process.

**28.**

Defendant failed to take corrective action within 30 business days of the receipt of the RESPA dispute letters from Mrs. Raunona Kroll. Specifically, Defendant did not make (1) any

necessary corrections to Mr. Eric A. Kroll's account for the RESPA dispute letters nor did it provide (2) written notification of the correction in response to these dispute letters, (3) any communication regarding the force-placed mortgage, (4) the amount of the fact that she provided documentation of the insurance, and that (5) the late fees and costs accumulated were along with monthly payments.

## 29.

Mrs. Raunona Kroll has also suffered emotional distress flowing from Defendant's violation of RESPA. Both Mr. Eric A. Kroll and Mrs. Raunona Kroll suffers from deep mental anguish that Defendant will persist in not conducting a thorough investigation as is required by 12 U.S.C. § 2605(e)(2) and must presently live with the knowledge that they may lose their home due to Defendant's actions, which is about to commence foreclosure proceedings. They also presently lives with the impending dread of a large (and wrongful) payment that would impose a severe hardship on her to pay, and the fear of the resulting wrongful foreclosure that would be instituted if this large payment cannot be made.

## 30.

Mrs. Raunona Kroll spoke with Defendant several times during the mortgage and was told that she was liable on this mortgage note as well.

## 31.

Mrs. Raunona Kroll was told to sign the note for Mr. Eric A. Kroll's even when it's his separate property regime under Louisiana law, but never explained that she did not need to and the legal implications.

## 32.

The Krolls have attempted to amicably resolve this matter and there has been zero communication from the mortgagee or their counsel in resolving this matter. Further, the

undersigned has attempted to communicate with counsel for the mortgagee and has not yet heard a response. .

### 33.

The allegations set forth above show that Defendant intentionally sought to exclude, evict, and displace Mr. Eric A. Kroll, who is a disabled African male, from his residence, with Defendant being fully aware of his disabilities and thus intentionally discriminating on the basis of race and color and disability.

### 34.

As a result of the described discriminatory actions undertaken by Defendant has injured Plaintiffs by interfering his housing.

### 35.

Defendant's actions was intentional, willful, reckless and in complete disregard of Plaintiffs' federal rights.  As a participant in the loaning mortgage business, Defendant is aware of the federal law as it pertains to housing discrimination.

### IV. CAUSES OF ACTION

### 36.

The foregoing Defendant is liable unto the Plaintiffs, Mr. Eric A. Kroll and Mrs. Raunona Kroll, for acts, omissions, and representations of the nature which justify the damages to Plaintiffs for the following reasons, to wit:

Count One—Civil Rights of Action of 1866 (42 U.S.C. § 1982)

### 37.

Plaintiffs incorporates the abovementioned paragraphs 1 through 34 by reference as though fully set forth herein.

### 38.

The Civil Rights Act of 1866, Section 1982, provides in relevant in part, "[a]ll citizens of the United States shall have the same right...as is enjoyed by white citizens therefore to...purchase, lease, sell, hold and convey real...property." By engaging forgoing discriminatory conduct, Defendants have violated Civil Rights Act of 1866, Section 1982.

**39.**

Plaintiffs have been injured by Defendant's discriminatory conduct and have suffered damages as a result.

**40.**

Defendant's conduct was intentional, willful, and made in disregard of rights of Mr. Eric A. Kroll and others.

**41.**

Accordingly, Defendant is liable to Plaintiffs for its discriminatory actions and/or omissions.

**42.**

As a result of the conduct or actions of Defendant, Plaintiffs suffered damages, economic loss, inconvenience, and emotional distress.

**43.**

As a result of threat, conduct or actions of Defendant, Plaintiffs suffered or will suffer additional damages including economic loss, inconvenience, emotional distress, and lost housing opportunity.

Count Two—Federal Fair Housing Act (42 U.S.C. § 3601 *et seq.*)

**44.**

Plaintiffs incorporate the abovementioned paragraphs 1 through 43 by reference as though fully set forth herein.

**45.**

Defendant's conduct, as described above constitutes discrimination against Mr. Eric A. Kroll, with respect being fully aware that he was a 100% disabled African American veteran who is elderly and his dwelling was located in New Orleans East, a majority-minority local, when there was a refusal to accept payment, provide credit for payment, provide an explanation why they could not pay online or by phone, or otherwise make unavailable or deny, a dwelling, which indicate a preference, limitation, or discrimination because of Mr. Eric A. Kroll' race or color, in violation of Section 3604(a) of the Federal Fair Housing Act (42 U.S.C. § 3601 *et seq*).

**46.**

At all times relevant, Defendant knew that Mr. Eric A. Kroll was disabled with mental health issues suffered.

**47.**

As such, Defendant's conduct constitutes discrimination, which included—a refusal to allow payment, at the expense of the handicapped person, Mr. Eric A. Kroll, reasonable modifications of payment.

**48.**

Further, Defendant's conduct also constitutes discrimination when there is a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person, Mr. Eric A. Kroll, equal opportunity to use and enjoy a dwelling.

**49.**

Mr. Eric A. Kroll is an aggrieved person as defined in 42 U.S.C. § 3602(i) and has been injured by Defendant's discriminatory conduct, and have suffered damages as a result.

**50.**

Defendant's conduct was intentional, willful, and made in disregard for the rights of Mr. Eric A. Kroll and others.

**51.**

Accordingly, Defendant is liable to Plaintiff for its discriminatory actions and/or omissions.

**50.**

As a result of the conduct or actions of Defendants, Plaintiff suffered damages, economic loss, inconvenience, and emotional distress.

**52.**

As a result of threat, conduct or actions of Defendant, Plaintiffs suffered or will suffer additional damages including economic loss, inconvenience, emotional distress, and lost housing opportunity.

**53.**

Accordingly, under 42 U.S.C. § 3613(c), Plaintiffs are entitled actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

Count Three—The Truth in Lending Act (TILA), 15 U.S.C. 1601 *et seq.*

**54.**

Plaintiff incorporates the abovementioned paragraphs 1 through 53 by reference as though fully set forth herein.

**55.**

The Truth in Lending Act (TILA), 15 U.S.C. 1601 *et seq.*, was enacted on May 29, 1968, as title I of the Consumer Credit Protection Act (Pub. L. 90-321). The TILA, implemented by Regulation Z (12 CFR 1026), became effective July 1, 1969.

**56.**

The Dodd-Frank Act generally granted rulemaking authority under the TILA to the Consumer Financial Protection Bureau (CFPB).Title XIV of the Dodd-Frank Act included a number of amendments to the TILA, and in 2013, the CFPB issued rules to implement them.

**57.**

In 2013, the CFPB further amended Regulation Z as well as Regulation X, the regulation implementing the Real Estate Settlement Procedures Act (RESPA), to fulfill the mandate in the Dodd-Frank Act to integrate the mortgage disclosures under TILA and RESPA sections 4 and 5. Regulation Z now contains two new forms required for most closed-end consumer mortgage loans.

**58.**

Pursuant to Section 1026.36(c)(2), a servicer may not impose on the consumer any late fee or delinquency charge in connection with a payment, when the only delinquency is attributable to late fees or delinquency charges assessed on an earlier payment, and the payment is otherwise a periodic payment for the applicable period and is received on its due date or within any applicable courtesy period.

**59.**

Defendant violated its obligations under the Cranston-Gonzales amendment, when it failed to take corrective action of recognizing and acknowledging Mr. Eric A. Kroll's deferral of the November 2022 through present payments to the end of his loan as well as the deferring the payments due from November 2022 through December 2023.

**60.**

Pursuant to Section 1026.36(c)(1), Defendant failed to comply with the provisions of RESPA for the following:

    A. Failed to credit a periodic payment to the Mr. Eric A. Kroll's loan account as of the date of receipt, except in instances where the delay will not result in a charge to the

Plaintiffs or in the reporting of negative information to a Plaintiffs reporting agency.[1]

B. Failed to accept and/or retain a partial payment (any amount less than a periodic payment) in a suspense or unapplied payment account without disclosing to the Plaintiffs' in the periodic statement (if required) the total amount(s) held in the suspense account and applying the payment to the balance upon accumulation of sufficient funds to equal a periodic payment.

C. While Defendant has provided written requirements for accepting payments in writing, but has routinely has then accepted payments by direct deposit withdraws and phone payments that do not conform to the written requirements, the Defendant must credit the payment as of five days after receipt.

D. Failed to accurately reflect the current payment amount—how much Plaintiffs owe; how much money is applied to principal, interest, and escrow; late payment fees and the date you need to pay the amount to avoid the fee; payment options, if your mortgage loan has multiple payment options; and an explanation of whether the principal balance will increase, decrease, or stay the same under each option.

E. Failed to accurately reflect how total payments have been applied, since the last statement and since the beginning of the year; transaction activity, with the amount and date of charges or credits that affect their current bill; and information on partial payments (that is, payments you made that were less than the full amount owed) and what must be done for the money to be applied to your loan balance.

---

[1] NOTE: For the purposes of section 1026.36(c) a periodic payment is "an amount sufficient to cover principal, interest, and escrow for any given billing cycle." If the consumer owes late fees, other fees, or non-escrow payments but makes a full periodic payment, the servicer must credit the periodic payment as of the date of receipt.

F.  Failed to accurately provide Plaintiff a notice of delinquency. This can be on your statement or a separate notice. It shows the date you became delinquent, your account history for the past six months, how much to pay to bring Plaintiff's account current, possible risks and costs (such as foreclosure) if they don't bring payments up to date, information about any foreclosure avoidance options or loss mitigation programs that you've agreed to (if applicable), information about housing counseling, and a notice whether the servicer has started the foreclosure process.

G.  Failed to provide notice at the special mailing address in Texas, if there is one, for written requests for information about the loan or for reporting an error Defendant has made; and how to contact a housing counselor for help.

H.  Failed to provide Plaintiffs with an opportunity for payments credited promptly by Defendant have to apply their full payments to Mr. Eric A. Kroll's account as of the day they come in. Defendant failed to tell Plaintiffs about this on Mr. Eric A. Kroll's statement when that special account collects enough money to make a full payment of principal, interest, and any applicable escrow, Defendant has to credit that payment to Mr. Eric A. Kroll's account.

**61.**

Defendant failed to provide Plaintiffs with notification about force-placed insurance if they failed to keep their home insured, at least 45 days before it charged them for a force-placed insurance policy. Defendant further failed to update its records after Plaintiffs sent proof to them of the insurance.

**62.**

Defendant further failed to have a process for resolving errors and information requests. When Mrs. Raunona Kroll wrote to Defendant to ask for information or to tell them about an error,

the Defendant further failed to answer and/or to acknowledge the letter generally within five days (excluding weekends and holidays).

**63.**

Mutual of Omaha Mortgage's failure to comply with the provisions of RESPA and investigate and correct the concerns raised by Plaintiffs have caused them to suffer actual damages in the form of great anxiety, anguish, and worry associated with a possible foreclosure proceeding, as well as increased cost of credit due to their losing the opportunity to refinance the home at a much lower interest rate. It also has caused them actual damages regarding the misapplication of his payments, and incidental time and costs associated with the RESPA dispute letters.

**64.**

Mutual of Omaha Mortgage's failure to comply with the provisions of RESPA is part of a pattern and practice of noncompliance and Both Mr. Eric A. Kroll and Mrs. Raunona Kroll are entitled to additional damages under RESPA.

**65.**

Both Mr. Eric A. Kroll and Mrs. Raunona Kroll are further entitled to recover, upon successful prosecution of this action, the costs of this action, including reasonable attorney's fees, for Mutual of Omaha Mortgage's violations of RESPA.

Count Four—Fair Credit Reporting Act, (15 U.S.C. §1681s–2 *et seq.*)

**66.**

Plaintiffs incorporate the abovementioned paragraphs 1 through 65 by reference as though fully set forth herein.

**67.**

Pursuant to FCRA, 15 U.S.C. § 1681s-2, Sections 623(a)(1)(A) and (a)(1)(C), Defendant failed to negligently and willfully failed to comply the general prohibition on reporting inaccurate information Defendant knows or have reasonable cause to believe is inaccurate. Upon information

and belief, Defendant is subject to this general prohibition because it does not clearly and conspicuously specify an address to which Plaintiff may write to notify the Defendant that certain information is inaccurate.

### 68.

Pursuant to FCRA, 15 U.S.C. § 1681s-2, Section 623(a)(2), Defendant had a duty to correct and update information regarding the inaccurate reporting and promptly provide complete and accurate information to the consumer reporting agencies. In addition, the Defendant must notify all consumer reporting agencies that received the information of any corrections, and must thereafter report only the complete and accurate information. In both instances, Defendant failed to negligently and willfully failed to comply with the requirements with these provisions of the FCRA.

### 69.

Pursuant to FCRA, 15 U.S.C. § 1681s-2, Section 623(a)(8), Defendant failed to a completely and/or accurately report the dispute of any information reported by the Plaintiffs, the furnisher may not subsequently report that information to a consumer reporting agency without providing notice of the dispute. Defendant further failed to complete an investigation within 30 days (or 45 days, if the consumer later provides relevant additional information) unless the dispute is frivolous or irrelevant or comes from a "credit repair organization."

### 70.

As a result of defendant Mutual of Omaha Mortgage's failure to comply with the requirements of the FCRA with respect to Mr. Eric A. Kroll and Mrs. Raunona Kroll, they have suffered actual damages, including damage to their reputation, emotional distress, mental anguish, stress, humiliation, aggravation, for which they seek damages in amounts to be determined by the jury. Plaintiffs also seeks punitive damages in an amount to be determined by the jury.

Count Five—Section 5(a) of the Federal Trade Commission Act, codified at 15 U.S.C. §45(a)

**71.**

Plaintiffs incorporate the abovementioned paragraphs 1 through 70 by reference as though fully set forth herein.

**72.**

Section 5(a) of the Federal Trade Commission Act, codified at 15 U.S.C. §45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." This prohibition applies to any aspect of an institution's products and services, including the servicing of purchased mortgage loans.

**73.**

Defendant represented to Plaintiffs falsely and intentionally the errors would be corrected; and in addition, the disputes would be addressed. These acts and omissions conducted by Defendant constitute unfair or deceptive acts or practices in or affecting commerce, of which Plaintiffs are entitled to all damages sustained as a result of Defendant, statutory penalties, and attorneys' fees.

**74.**

As a result of the conduct or actions of Defendants, Plaintiff suffered damages, economic loss, inconvenience, and emotional distress.

**75.**

Accordingly, Plaintiffs are entitled actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

Count Six—Negligence

**76.**

Plaintiffs incorporate the abovementioned paragraphs 1 through 75 by reference as though fully set forth herein.

**77.**

Louisiana Civil Code article 2315 provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Further, Louisiana jurisprudence has found that Louisiana Civil Code article 2315 is broad enough to encompass a cause of action for negligent misrepresentation.[2] Accordingly, a defendant is liable for negligent misrepresentation when (1) the defendant, in the course of its business or other matters in which it had pecuniary interest, supplied false information, (2) the defendant had a legal duty to supply correct information to the plaintiff, (3) the defendant breached its duty, which can be breached by omission as well as by affirmative misrepresentation, and (4) the plaintiff suffered damages or pecuniary loss as a result of the its justifiable reliance upon the omission or affirmative misrepresentation.

**78.**

Defendant, and its employees purposefully reassured Plaintiffs the mortgage and forced insurance matter be resolved in a quick and efficient matter. Defendant owed Plaintiffs a duty to provide truthful, accurate and complete information. Rather than providing Plaintiffs truthful, accurate and complete information, Defendant deceived and misinformed Plaintiffs regarding the resolution of this matter.

**79.**

As a result of this misrepresentation, Plaintiffs are entitled to damages sustained for economic loss, mental anguish and emotional distress.

<u>Count Seven—Breach of Lease & Wrongful Eviction</u>

**80.**

Plaintiffs incorporate the abovementioned paragraphs 1 through 79 by reference as though fully set forth herein.

---

[2] *Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007 (La.1993).

**81.**

Pursuant to La. R.S. 51:1405 *et seq.*, Louisiana Unfair Trade Practices and Consumer Protection Law (hereinafter referred to as "LUTPA) prohibits methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

**82.**

Defendant represented to Plaintiffs falsely and intentionally the errors would be corrected; and in addition, the disputes would be addressed. These acts and omissions conducted by Defendant constitute intentional violations of LUTPA, of which Plaintiffs are entitled to all damages sustained as a result of Defendant, statutory penalties, and attorneys' fees pursuant to La. R.S. 51:1409.

## V. DAMAGES

**83.**

Based upon the above and foregoing, Count One through Count Six, Plaintiffs sustained and seek the following non-exclusive damages against the Defendants:

1. Plaintiffs are entitled actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs;

2. Mental anguish and inconvenience due to loss of use of property;

3. All economic loss, inconvenience, emotional distress, and lost housing opportunities;

4. Costs of all experts and inspection fees;

5. Attorney fees pursuant to La. R.S. 51:1409;

6. All other damages to which Plaintiffs are entitled as a matter of law; and

7. Penalties, Attorney's fees, court costs, interests, and costs as provided by law.

**84.**

At all times alleged herein, Plaintiffs acted in good faith, seeking to mitigate its damages.

## VI. DEMAND FOR JURY TRIAL

### 85.

Plaintiffs desire and demand a trial by jury on all issues so triable in this case pursuant to pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**WHEREFORE, PETITIONERS, ERIC A. KROLL and RAUNONA KROLL, PRAY** that:

I.    Defendant, **MUTUAL OF OMAHA MORTGAGE, INC.,** each be duly served with a copy of this Complaint and be cited to appear and answer hereto;

II.   Petitioners request that they be entitled to damages that include but not be limited to loss of use of the property, pain and suffering, mental anguish and loss of housing opportunities, punitive damages, past and future medical expenses, punitive, all economic loss caused by the Defendant;

III.  Petitioners request an award of pre-judgment and post-judgment interest, as appropriate, at the highest rate allowed by law;

IV.   After the lapse of all legal delays and due proceedings, there be judgment rendered  herein in favor of the Plaintiffs and against Defendant, **MUTUAL OF OMAHA MORTGAGE, INC.,** individually, *jointly, and in solido,* for such damages as are necessary to  fully and fairly compensate Plaintiffs, together with judicial interest from date of  demand, for all costs of this suit, for expert witness fees, for penalties and attorney's  fees as provided by law;

V.    For Petitioners to be granted all further and different relief as the justice and equity of this case would require.

VI.   Petitioners hereby demands a **trial by jury** for all counts so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Respectfully Submitted,

/s/Shermin S. Khan

THE KHAN LAW FIRM, L.L.C.
Shermin S. Khan (Bar Roll No. 37748)
s.khan@sklawla.com
T. Alexander Hartford (Bar Roll No. 41270)
a.hartford@sklawla.com
2714 Canal Street, Suite 300
New Orleans, LA 70119
Telephone: (504) 354-9608
Facsimile: (504) 459-2918
*Attorneys for Plaintiffs, Eric A. Kroll and Raunona
Kroll*